## Naylor's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

Stearne, J., Auditing Judge.—This trust arose under the residuary clause of the will of the decedent, who died on July 10, 1898, wherein he gave one fourth of his residuary estate to his trustees named, in trust to pay the net income therefrom to his son, Morris Naylor, quarterly, for his life or, at the discretion of the trustees, to apply the same for the use and benefit of himself and family during life, without liability to creditors or right to anticipation, assignment, or attachment or diversion from the maintenance and support of himself and family during life, and with remainder to his children in equal shares. A copy of the will, certified by counsel to be correct, is annexed hereto.

The fund presently accounted for was awarded to the trustees upon adjudication of the executors' account, confirmed absolutely on February 26, 1916.

Alexander M. Fox, one of the trustees, died on October 6, 1907, and John S. Naylor, another of the trustees, died on August 20, 1914. Morris Naylor, the life tenant, died on March 3, 1933, leaving one child, Helen Engle Naylor, who is living and of age. He left no issue of any deceased child or children. It is stated that no administration has, as yet, been raised on his estate.

The reason or purpose of the filing of the account is that Morris Naylor, the life tenant, died as aforesaid, and the trust is therefore terminated.

An application has been made by the widow of the deceased life tenant to surcharge the accountant with approximately $3,700, representing the difference between the aggregate monthly payments of $150 provided for in an agreement of separation and assignment entered into between the life tenant and his wife (which agreement was duly served upon the trustee), and the amount which was actually received by the wife under said agreement. The question is one of law. It may be thus stated: Is an assignment binding and enforceable against a trustee which is made by a beneficiary under a spendthrift trust for the purpose of providing for the support of his wife?

Section 19 of the Wills Act of June 7, 1917, P. L. 403, 409, provides in effect that all income, even though devised or bequeathed free from liability for debts, contracts, or engagements of the beneficiary, or so as not to be subject to execution, attachment sur judgment, sequestration, or other process, shall, notwithstanding such testamentary provisions, be subject to and liable for the support and maintenance of the wife and minor children of the beneficiary. The Act of May 10, 1921, P. L. 434, empowers courts of competent jurisdiction to issue writs of execution against property of defendants and attachment execution against trusts, including those commonly known as spendthrift trusts, no matter when such trusts were created, in cases where an order, award, or decree has been made against a husband for support of his wife or children, or both, and makes such attachment execution against trusts a continuing lien and levy for fifty percent of such money or property. Everhart v. Everhart, 87 Pa. Superior Ct. 184, decided that this act was passed for the protection and relief of the citizens of this State who otherwise might become a public charge, and that its provisions do not authorize the issuance of an attachment based upon a foreign judgment. Prior to the act of assembly above referred to, it was considered that a spendthrift clause protected the husband's interest against a wife's claim for support or alimony: Thackara v. Mintzer, 100 Pa. 151; Board of Charities, etc., v. Lockard, 198 Pa. 572.

The Supreme Court, in Moorehead's Estate, 289 Pa. 542 (1927), affirmed the decision of the lower court, restraining testamentary trustees from paying income to a cestui que trust (protected by a spendthrift clause) until his wife was afforded a reasonable opportunity to issue an appropriate writ to enforce a judgment for support which she had previously obtained. In that case, the testatrix (the creator of the trust) died in 1908, prior to the Wills Act of 1917 and the Act of 1921 above referred to. Moorehead's Estate is a leading case and has been extensively reviewed in 41 Harv. L. R. 409, 43 Harv. L. R. 63, and 76 U. of P. L. R. 220.

The legal principle upon which these decisions and acts are based is just and eminently sound. While a testator may stipulate that the income be paid to the beneficiary free from debts, obligations, assignments, etc., nevertheless there is a duty upon such beneficiary to support his own wife and children, which involves the Commonwealth. If the cestui que trust fails in his duty, the wife and children are liable to become public charges. Therefore, despite the testamentary direction, and as a matter of public policy, a spendthrift provision falls before a court order for such support.

But suppose, as in the present case, there is a voluntary assignment by the beneficiary for the support of his wife or children instead of a court order. The commentator in 43 Harv. L. R. 63, 66, cites one case in New Jersey and one in New York where such assignments have been upheld. He states, however, that in Pennsylvania such assignments have been held to be ineffectual, and

refers to Hartman's Estate, 31 Pa. Superior Ct. 152. To this case I would add two decisions of the Philadelphia Orphans' Court, i. e. Schmidt's Estate, 5 D. & C. 470, and Smith's Estate, 13 D. & C. 508. The commentator states that after Moorehead's Estate it is probable that Hartman's Estate, supra, would not be followed. I disagree with this prediction. In my opinion it is one thing to secure a judgment of a court of competent jurisdiction that a husband is liable for his wife's or children's support and a decree as to the amount thereof, but quite a different thing to have the parties themselves determine the question. It is only the paramount interest of the Commonwealth involved which justifies a wife, with the appropriate procedure, to transcend an express testamentary direction.

Upon first consideration, it may seem quite immaterial whether such support is secured by voluntary assignment or through a court order. Deeper reflection, however, discloses that it would be a very dangerous policy indeed, and would open the door to actual fraud, if the parties themselves, without any judicial supervision, could voluntarily make enforcible agreements and assignments, even though for support, which directly violate the express direction of the founder of the trust. I seriously doubt that the Superior or Supreme Court would permit the parties to do this.

Irrespective, however, of the correct philosophy to be applied, I am bound by the decisions of the court of superior jurisdiction and of our own court in banc, hereinbefore referred to, unless and until they are reversed or their decisions modified. I therefore rule that a voluntary assignment by a cestui que trust in violation of the provisions of a spendthrift clause, even though for the support of a wife, is not binding and enforcible.

Applying this law to the present facts, Morris Naylor and his wife were residents of the State of New Jersey at the time the separation agreement containing the assignment was entered into and at the time the assignment was served upon the trustee. After the separation, the life tenant became a resident of the State of Florida, where he died. His widow, the present claimant, is still a resident of the State of New Jersey. No court procedure fixing liability for support, and no attachment, was ever secured and served by the claimant upon the trustee. All that the claimant ever did was to serve a copy of the separation agreement, with the assignment provisions therein contained, upon the trustee. The trustee refused to recognize the agreement and assignment but did, however, under direction of the life tenant, from October 4, 1926, until March 2, 1933, shortly before the life tenant's death, pay to the claimant various sums aggregating several thousand dollars. In each instance, however, while the check was drawn to the order of the claimant, nevertheless the receipt was signed by the life tenant in person, and the items were treated as distribution to him. This procedure was regular and has had the approval of this court. See Shuster's Estate, 26 Dist. R. 232 (1917), and cases there cited.

The assignment by the life tenant to his wife was wholly ineffectual for the purpose intended, for reasons above stated. As the parties were non-residents, under Everhart v. Everhart, supra, the wife was precluded from securing a court order for her support against a spendthrift trust created by a resident decedent, and, this being the case, certainly she cannot do so by virtue of a voluntary assignment made by the cestui que trust. The application to surcharge is accordingly dismissed.

*B. Graeme Frazier, Jr.,* for exceptant; *Raymond M. Remick,* contra.

VAN DUSEN, J., October 27, 1933.—The auditing judge comprehensively and correctly discussed the law applicable to a spendthrift trust and the right to

assign the income for the support of the beneficiary's wife. Both sides now press upon us the language of this will, claiming that the usual considerations which affect the question are not applicable here. The language is:

"And in further trust to keep the portion of my said son, Morris Naylor, invested at interest and after paying thereout the expenses incident to the execution of the trust to pay to my son Morris Naylor quarterly all the balance or residue of said income during his life, or at the direction of said trustee to apply the same for the use and benefit of himself and family during his life in such a way and manner that no part thereof shall be liable to his creditors or be anticipated, pledged, assigned, attached or diverted from the maintenance and support of himself and his family during his life."

To us this means that the trustee could pay the beneficiary, or in its discretion, could apply the income between him and his family, that is, his wife, without being hampered by his contracts, assignments, etc. That is what the trustee did, paying some income to his wife and some to him, ignoring the assignment.

The exceptions are dismissed and the adjudication is confirmed absolutely.